**Jon D. HALL**

v.

**Bill McLESKY, et al.**

Court of Appeals of Tennessee, at Nashville.

Nov. 21, 2001.

Order on Petition to Rehear Jan. 11, 2002.

Permission to Appeal Denied by Supreme Court July 8, 2002.

Jon D. Hall, Nashville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Mark A. Hudson, Senior Counsel, for the appellees, Bill McLesky, Howard Brandon, Robert Waller, Ricky Bell, Charles Tracey, Sharon Johnson, Jim Rose, Opus Correctional, LLC.

## OPINION

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

A death row inmate filed a Petition for Declaratory Judgment, claiming that employees of the Department of Correction had caused his attorney's phone number to be removed from an approved calling list, and had refused to restore the number to the list in a timely way. The inmate named seven employees of the Department and a private telephone company as defendants, and demanded monetary damages. The trial court dismissed the action, because the petitioner failed to comply with the mandatory requirements of the Uniform Administrative Procedures Act. Because we do not believe the petitioner was entitled to relief under any of the theories he advanced, we affirm the trial court.

## I. A PRISONER'S GRIEVANCE

Jon D. Hall was convicted of first-degree murder, and sentenced to death for the 1994 strangulation and drowning of his wife. During his confinement at Riverbend Maximum Security Institution (RMSI) in Nashville, Mr. Hall filed a federal lawsuit against the two attorneys who had defended him at trial, and who represented him before the Court of Criminal Appeals. On April 2, 1998, the Court relieved the two attorneys of any further representation of Mr. Hall and appointed Jackson attorney Mark Donahoe to represent him in his appeal to the Supreme Court.

According to Mr. Hall's petition, Mr. Donahoe was placed on his attorney calling list shortly thereafter, and the inmate made at least fifteen collect calls to his attorney between April of 1998 and February of 1999. On February 24, 1999, Mr. Hall received a notice advising him that the State had been unable to validate Mr. Donahoe's phone number, and that the number had been blocked from the inmate's caller list. The signature of Sergeant Bill McLesky was on the notice. Mr. Hall promptly filed an emergency grievance, alleging that Sergeant McLesky had wrongfully removed Mr. Donahoe's number from the list, and demanding that it be restored immediately.

The procedures for filing inmate grievances are outlined in Index # 501.01 of the Policies and Procedures of the Department of Correction, and detailed in a handbook made available to inmates. These procedures include three levels of possible review, each of which is to be conducted according to strict time limits, so that grievances may be resolved promptly. There is also a provision for emergency grievances, which are expedited in situations where the normal time limits "could

cause the grievant substantial risk of personal injury or irreparable harm." Index # 501.01(IV)(C).

Apparently, the authorities did not treat Mr. Hall's grievance as an emergency. On March 1, Deputy Warden Robert Waller filed a Level I response to the grievance. It stated that Sergeant McLesky had not blocked the number, but that the Department of Correction had asked Opus Telecom, which furnishes telephone services to the Department, to verify all attorney numbers, and that Opus had unsuccessfully attempted to reach Mr. Donahoe for verification. Warden Waller's response also stated that Mr. Donahoe's calls would remain blocked until the attorney sent the warden a letter or fax stating that he would accept calls from Mr. Hall. On March 9, 1999, grievance committee chairperson Howard Brandon concurred with Mr. Waller's response.

Mr. Hall then invoked the provisions for a Second Level Review by appealing to the grievance committee and the warden. The committee conducted a hearing on March 17, and subsequently filed a concurrence with the previous determination, which was signed by five committee members and by Warden Ricky Bell. Finally, Mr. Hall exercised his right to a Third Level Review by appealing to Assistant Commissioner Jim Rose. Mr. Rose denied the appeal on March 31, 1999.

## II. PROCEEDINGS IN THE TRIAL COURT

On May 4, 1999, Mr. Hall filed a Suit for Declaratory Judgment in the Chancery Court of Davidson County. The named defendants were Sergeant McLesky, Howard Brandon, grievance committee members Charles Tracey and Sharon Johnson,

Wardens Waller and Bell, Commissioner Rose, and Opus Correctional Incorporation (sic). Mr. Hall faulted the defendant correctional employees for removing Mr. Donahoe's number from his calling list, for not treating his grievance as an emergency, and for not restoring the number to the list during the grievance process.

The prisoner contended that the actions of the defendants had deprived him of his constitutional right to assistance of counsel. He noted that he was in the middle of an automatic direct appeal of his death sentence to the Tennessee Supreme Court, with oral argument set for June 2, 1999. Mr. Hall alleged that during the phone blockage, he had become aware of a case that furnished an argument for a possible reversal of his sentence on the ground of an erroneous jury instruction on intoxication and diminished capacity, and implied that as a result of the breakdown in communication, a supplemental brief prepared by Mr. Donahoe and filed in the Supreme Court on March 22, did not include anything about the allegedly erroneous jury instruction.[1]

Mr. Hall further stated that he sent a certified, return receipt letter to Mr. Donahoe's office on March 24, 1999, detailing his phone problems and the jury instruction argument. Mr. Donahoe apparently received the letter, and allegedly told Mr. Hall's mother that he had already sent a letter to the warden to correct the phone problem. But Mr. Hall claimed that he was still unable to contact his attorney during his last attempt on April 30, 1999. The petitioner asked the trial court to issue an emergency restraining order to the Department to unblock his attorney's number, and to award him compensatory

---

1. The Supreme Court's opinion in *State v. Hall*, 8 S.W.3d 593 (Tenn.1999), filed on November 15, 1999, does not address the case cited by Mr. Hall, or the challenged jury instruction. It does, however, discuss and reject the alleged factual predicate behind his argument of diminished capacity.

damages of $2,000, and punitive damages of $25,000.

The State responded to Mr. Halls's suit by filing a Motion to Dismiss on behalf of the seven departmental employees. The grounds asserted were the trial court's lack of jurisdiction, the personal immunity of the individual defendants, and the plaintiff's failure to state a claim upon which relief can be granted. *See* Rule 12.02(6), Tenn. R. Civ. P.

Opus Correctional LLC filed its own answer to the suit, asserting as affirmative defenses that the company was not properly served, that Mr. Hall did not suffer any harm as a result of any actions by Opus, and that there were no allegations of wrongdoing by Opus in the suit.

Mr. Hall filed a response to the State's motion on July 6, 1999, followed by several motions of his own. In his response, he argued that the correctional defendants were not entitled to immunity because their conduct amounted to gross negligence or actionable criminal behavior. He also characterized his suit for the first time as a 42 U.S.C. § 1983 claim for deprivation of civil rights. Mr. Hall reiterated his claims for monetary damages, noting that the defendants had since placed the phone number in question back on his caller list, but complaining that the action was "too little, too late." These same points were incorporated into Mr. Hall's motion to amend his complaint.

The trial court filed a Memorandum and Order on October 7, 1999, granting the plaintiff's Motion to Amend, but dismissing his suit for failure to follow the requirements for a Declaratory Judgment action found in the Uniform Administrative Procedures Act (UAPA). Mr. Hall then filed several post-judgment motions, including a Motion to Vacate or Amend the Memorandum and Order, accompanied by his affidavit, which alleged that Mr. Donahoe's name was removed from his phone list as a retaliation for his role in circulating a petition among death row inmates, protesting against the unreliability of the phone service provided to them. The trial court denied the motion, filing its final order in this case on May 26, 2000. This appeal followed.

## III. DECLARATORY JUDGMENT

■ Two different sections of the Tennessee Code deal with declaratory judgments. The general statutes, found at Tenn.Code. Ann. § 29–14–101, et seq. announce that courts of record have the power to "declare rights, status and other legal relations, whether or not further relief is or could be claimed." Tenn.Code. Ann. § 29–14–102. We note, however, that the courts of Tennessee are prohibited from entertaining an action for declaratory judgment against a state officer under this statute. *Carter v. McWherter*, 859 S.W.2d 343 (Tenn.Ct.App.1993). It therefore was proper for the trial court to construe Mr. Hall's suit as a Petition for Declaratory Judgment under the UAPA, Tenn.Code Ann. § 4–5–201, et seq.

Tenn.Code. Ann. § 4–5–225 of the UAPA makes it possible for an individual who is aggrieved by the action of a state agency to obtain relief from the courts if he follows the steps outlined in the Act. Tenn.Code Ann. § 4–5–225 reads, in pertinent part,

(a) The legal validity or applicability of a statute, rule or order of an agency to specified circumstances may be determined in a suit for a declaratory judgment in the chancery court of Davidson County, unless otherwise specifically provided by statute, if the court finds that the statute, rule or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges

of the complainant. The agency shall be made a party to the suit.

(b) A declaratory judgment shall not be rendered concerning the validity or applicability of a statute, rule or order unless the complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order.

The court observed that Mr. Hall had not complied with the basic requirements of the above statute, rendering it unable to consider the merits of his petition. For one thing, Mr. Hall did not name any agency as a party to the suit. Neither the Department of Correction nor the grievance committee were named as defendants, but only a number of departmental employees and a telecommunications subcontractor.

More importantly, there is no indication in the record that Mr. Hall had ever petitioned the Department for a Declaratory Order, despite the requirements of Tenn. Code Ann. § 4–5–225(b). The court therefore determined that it did not have jurisdiction over Mr. Hall's claim, and concluded that its only choice was to dismiss his petition. The trial court's conclusion is consistent with this court's prior ruling in *Watson v. Tennessee Department of Correction,* 970 S.W.2d 494 (Tenn.Ct.App. 1998).

### IV. WRIT OF CERTIORARI

■ In his appellate brief,[2] Mr. Hall does not address the question of jurisdiction under the UAPA. He argues, rather, that as a layman unskilled in the law, he incorrectly designated his suit as one for declaratory judgment. He contends that in accordance with the Supreme Court's

opinion in *McCallen v. City of Memphis,* 786 S.W.2d 633 (Tenn.1990), the trial court had the power to treat it as a Petition for Writ of Certiorari, and that the court therefore was obligated to do so.

The *McCallen* case is not really on point, and insofar as Mr. Hall's complaint was directed against individual defendants and a private company, rather than a governmental administrative or quasi-judicial body, it did not name any party with the power to grant him the relief he sought. Nonetheless, we will examine Mr. Hall's claim to determine whether the allegations contained in it would have entitled him to prevail under the common law writ of certiorari.

■ A writ of certiorari is an order from a superior court to an inferior tribunal to send up a complete record for review, so that the court can determine whether that tribunal has exceeded its jurisdiction, or has acted illegally, fraudulently or arbitrarily. *Yokley v. State,* 632 S.W.2d 123, 126 (Tenn.Ct.App.1981). The writ is not available as a matter of right; its grant or denial is within the sound discretion of the trial court, and will not be reversed on appeal unless there is abuse of that discretion. *Boyce v. Williams,* 215 Tenn. 704, 389 S.W.2d 272, 277 (1965).

■ Further, the scope of review under the common law writ of certiorari is very narrow. It does not involve an inquiry into the intrinsic correctness of the decision of the tribunal below, but only into the manner in which the decision was reached. *Powell v. Parole Eligibility Review Board,* 879 S.W.2d 871, 873 (Tenn.Ct.App.1994).

---

**2.** Mr. Hall did not file a timely brief, and this court ordered him to show cause why his appeal should not be dismissed for failure to file one. The appellant then filed an "Ex Parte Motion to Show Cause," which this court deemed to be his brief for purposes of this appeal.

Keeping these principles in mind, it does not appear to us that in exercising their authority, the grievance committee and the individuals involved in the grievance process deviated from the normal grievance procedures set out in Index # 501.01, including the time frame for each step in the process. Mr. Hall argues that their failure to follow the emergency grievance procedure was a grave violation of his rights. But while it is at least arguable that his status as a death row inmate triggers a right to the emergency procedures because of "substantial risk of personal injury or irreparable harm," it does not appear to us that the circumstances he described were so severe as to deprive the committee and its members of the discretion to determine whether or not his grievance should be considered an emergency.

The removal of Mr. Donahoe's name from the appellant's phone list came about because of a new screening procedure, and because Mr. Donahoe could not be reached by telephone in accordance with that procedure. Despite Mr. Hall's argument to the contrary, there is no evidence that the policy was directed against him personally. Further, the decision did not eliminate all channels of communication between Mr. Hall and his attorney. He was still able to use the mail, and to contact Mr. Donahoe through his mother, who apparently remained on the phone list. Finally, the committee provided a means to restore direct contact between Mr. Hall and his attorney. Though it took a while for that contact to be re-established, the delay cannot be attributed to the grievance committee.

In sum, it does not appear to us that Mr. Hall's allegations concerning the actions of the grievance committee and its members amount to a claim entitling him to the common law writ of certiorari. He does not allege facts that would support a decision

to issue the writ (arbitrary, illegal, or action in excess of jurisdiction). Therefore, even if the trial court had deemed his suit to be a Petition for Writ of Certiorari, and ignored his failure to name a proper party, Mr. Hall still would not have been entitled to the writ.

## V. 42 U.S.C. § 1983

 Even if Mr. Hall had avoided the procedural hurdles associated with the UAPA by filing a civil rights suit of the kind which is authorized by 42 U.S.C. § 1983, we still do not believe the facts he alleged would have entitled him to the relief he sought.

 42 U.S.C. § 1983 reads in pertinent part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Numerous opinions dealing with claims under this federal statute have reiterated the constitutional rights of prisoners to have meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *McDonald v. Hall*, 610 F.2d 16 (1st Cir.1979); *Boston v. Stanton*, 450 F.Supp. 1049 (D.C.Mo.1978). This right often includes the assistance of, and access to, legal counsel. *Dreher v. Sielaff*, 636 F.2d 1141 (7th Cir.1980); *Via v. Cliff*, 470 F.2d 271 (3rd Cir.1972).

 However, the constitution only requires that prisoners have reasonable access to the courts, and their rights must

be balanced against the legitimate regulatory needs of prison administration. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Harrell v. Keohane*, 621 F.2d 1059 (10th Cir.1980). Also, in order to prevail on a claim that he was denied meaningful access to the courts, a prisoner must present sufficient evidence that he was prejudiced by the alleged deprivation. *Cooper v. Delo*, 997 F.2d 376 (8th Cir.1993); *Raske v. Dugger*, 819 F.Supp. 1046 (M.D.Fla.1993).

The federal courts have had a few opportunities to deal specifically with the question of restrictions placed upon telephone communications between attorneys and prisoners. In *Williams v. ICC Committee*, 812 F.Supp. 1029 (N.D.Cal.1992), for example, the court said that an inmate could state a claim only if he could demonstrate that the phone was his only avenue for meaningful access to his lawyer because he was unable to contact the lawyer by mail, or was denied visits from his lawyer. In another case, *Bellamy v. McMickens*, 692 F.Supp. 205 (S.D.N.Y. 1988), the court ruled that a prisoner's civil rights were not violated simply because he could not telephone his attorney whenever he wanted, but was subject to delays imposed by prison regulations.

Mr. Hall did not assert sufficient facts to indicate that he was prejudiced by the temporary interruption of telephone service to his attorney, or that he could not enjoy meaningful contact with his attorney during the period when telephone service was interrupted. It appears that any restriction imposed upon his constitutional right to meaningful access to the courts was of limited scope and duration, and was related to a legitimate regulatory purpose on the part of prison administration. He therefore suffered no constitutional deprivation that would have been sufficient to invoke the protections of 42 U.S.C. § 1983.

## VI.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Jon D. Hall.

## ORDER ON PETITION TO REHEAR

Jon Hall has filed a respectful and well-written Petition to Rehear. After examining his Petition and the arguments contained therein, we conclude that Mr. Hall is not entitled to the relief he seeks, and we accordingly decline to grant him another hearing.

## I.

Mr. Hall contends that we overlooked the impact that the disruption of telephone contact between himself and his attorney had on the Supreme Court's decision on the appeal of his conviction, *State v. Jon Hall*, 8 S.W.3d 593 (Tenn.1999). While he acknowledges our observation that the Supreme Court discussed and rejected the factual predicate behind his argument of diminished capacity, he draws our attention to the first footnote to the Supreme Court's opinion:

"During oral argument, the defendant raised two additional issues for the first time: first, whether the trial court erred in permitting the State to use a mannequin as demonstrative evidence to document the location and extent of the victim's injuries, and second, whether the trial court erred during the guilt phase by instructing the jury, in reference to the intoxication defense, that '[i]ntoxication is irrelevant [sic] to the issue of the essential element of the Defendant's culpable mental state.' Neither the use of the mannequin nor the misstatement of the pattern jury instruction were ob-

jected to at trial. Moreover, they were not listed as errors in either the Motion for New Trial or in the appeal to the Court of Criminal Appeals. We find that the failure to raise these issues in previous proceedings constitutes waiver, and we decline to address them at this time."

Relying on this language, Mr. Hall then argues that if his attorney had timely briefed the question of the erroneous jury instruction, the Supreme Court would have been compelled to reduce his conviction from first-degree murder to second degree murder, or to order a new trial. We do not agree.

## II.

The proceedings of the Supreme Court, like those of this court, are governed by the Rules of Appellate Procedure. Rule 36(b) sets out the standards for reversal:

> (b) Effect of Error.—A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.

Thus, even if the Supreme Court had chosen to address the jury instruction error, it still would not have been required to reverse the trial court, unless it found that the error was prejudicial to the degree set out in Rule 36(b). In other words, errors deemed to be harmless do not furnish grounds for reversal.

As we indicated above, the Supreme Court addressed the evidence behind Mr. Hall's claim of diminished capacity, and found it less than compelling.

> "Our Code provides that while voluntary intoxication is not a defense to prosecution for an offense, evidence of such intoxication may be admitted to negate a culpable mental state. The defendant's argument that his intoxication rendered him unable to form the mental state necessary for first degree murder, however, is not persuasive. The defendant's own statements to Dutton and Dr. Zager constitute the only evidence of intoxication. No witness described the defendant as drunk or intoxicated. Furthermore, the defendant's conduct in traveling to Mrs. Hall's house, disconnecting the telephone, barricading the bedroom door, and completing his escape after the killing belies the claim that he was incapable of premeditation and deliberation."

8 S.W.3d at 600.

## III.

Mr. Hall correctly notes that because of the uniqueness and finality of the death sentence, the courts have found it necessary to exercise a greater degree of scrutiny over the process that results in such a sentence than in other cases. However, our Supreme Court has not exempted death penalty appeals from the harmless error standard. *See State v. Sims,* 45 S.W.3d 1 (Tenn.2001); *State v. Harris,* 839 S.W.2d 54 (Tenn.1992), *cert. denied,* 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993).

Mr. Hall cites several cases that state that harmless error analysis is inapplicable, and reversal automatic, when the purported error infects the entire trial process and necessarily renders the trial fundamentally unfair. We note that only a very limited class of errors meets these requirements. These include a trial judge's lack of impartiality, *State v. Benson,* 973 S.W.2d 202 (Tenn.1998); a complete denial of counsel, *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137

L.Ed.2d 718 (1997); denial of a public trial, *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); and defective jury instructions on reasonable doubt, *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1983).

On the other hand, an erroneous jury instruction that omitted an element of the offense charged was determined not to be exempt from the harmless error rule. *State v. Garrison* 40 S.W.3d 426 (Tenn. 2000); *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). A trial judge's erroneous instruction on self-defense in a capital murder case was likewise deemed to be harmless error. *State v. Sims,* 45 S.W.3d 1 (Tenn.2001). This does not mean that errors in jury instructions may not furnish grounds for reversal of the trial court, but rather that reversal in such cases is only appropriate if the error is found to have affected the result.

In light of the Supreme Court's analysis of the circumstances behind Mr. Hall's murder of his wife, we do not find that a timely challenge to the erroneous jury instruction would "more probably than not" have led to a different result. We accordingly reject Mr. Hall's claim that he was prejudiced by his attorney's failure to mount such a challenge to his conviction, and we deny his Petition to Rehear.