IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS MARCH 23, 2010

## CHARLES PATTERSON v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

**Direct Appeal from the Chancery Court for Lake County**
**No. 5472       Tony Childress, Chancellor**

_____

**No. W2009-01733-COA-R3-CV - Filed April 20, 2010**

_____

This appeal involves a petition for writ of certiorari filed by an inmate seeking review of his disciplinary conviction for assaulting a fellow inmate. TDOC did not oppose the issuance of the writ, and the certified record was filed with the trial court. Upon review of the record, the trial court denied the petition, and we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Noel H. Riley, II, Dyersburg, Tennessee, for the appellant, Charles Patterson

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, Jennifer L. Brenner, Assistant Attorney General, Nashville, Tennessee, for the appellees, Tennessee Department of Correction, et al

## OPINION

## I. FACTS & PROCEDURAL HISTORY

Charles Patterson ("Appellant") is an inmate in the custody of the Tennessee Department of Correction ("TDOC") housed at the Northwest Correctional Complex ("NWCX") in Tiptonville, Tennessee. Appellant, along with others, was charged with the disciplinary infraction of assaulting another inmate on October 9, 2007. Following a hearing on October 29, 2007, the NWCX disciplinary board (the "Board") found Appellant guilty, and it recommended the following punishment: ten days punitive segregation, a $5.00 fine, twelve months of package restriction, $646.91 restitution for medical expenses, involuntary administrative segregation placement ("IAS"), and a five-year sentence extension through the loss of sentence credits. Appellant appealed the Board's decision to Warden Tommy Mills, who affirmed the Board's finding of guilt. According to Appellant, Commissioner Little concurred with Warden Mill's affirmation of the Board's finding of guilt. Appellant then filed a petition for writ of certiorari in the Lake County Chancery Court, claiming that the Board's decision was based on insufficient evidence, that the Board failed to follow its policies and procedures resulting in a denial of due process, and that the Board's recommended punishment imposed atypical and significant hardships. TDOC did not oppose Appellant's petition and it filed a certified copy of Appellant's disciplinary record, and the trial court entered an Order granting Appellant's petition for writ of certiorari. TDOC then submitted a brief to the chancery court, and Appellant filed a memorandum of law and fact in support of his petition. Apparently based upon the record, the chancery court dismissed Appellant's petition.

## II. ISSUE PRESENTED

Appellant presents the following issue for review:

1. Whether or not the Board acted arbitrarily and capriciously in sentencing the Appellant to an additional five-year sentence.

## III. STANDARD OF REVIEW

"The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals." *Jackson v. Tenn. Dep't of Corr.,* No. W2005-02240-COA-R3-CV, 2006 WL 1547859, at *3 (Tenn. Ct. App. June 8, 2006) (citing *Rhoden v. State Dep't of Corr.,* 984 S.W.2d 955, 956 (Tenn. Ct. App.1988)). The

issuance of a writ of common-law certiorari is not an adjudication of anything. ***Keen v. Tenn. Dep't of Corr.,*** No. M2007-00632-COA-R3-CV, 2008 WL 539059, at *2 (Tenn. Ct. App. Feb. 25, 2008) (citing *Gore v. Tenn. Dep't of Corr.,* 132 S.W.3d 369, 375 (Tenn. Ct. App.2003)). Instead, it is "simply an order to the lower tribunal to file the complete record of its proceedings so the trial court can determine whether the petitioner is entitled to relief." ***Id.*** (citing *Hawkins v. Tenn. Dep't of Corr.,* 127 S.W.3d 749, 757 (Tenn. Ct. App. 2002); *Hall v. McLesky,* 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001)). "Review under a writ of certiorari is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently." ***Jackson,*** 2006 WL 1547859, at *3 (citing *McCallen v. City of Memphis,* 786 S.W.2d 633, 640 (Tenn. 1990)). "The reviewing court is not empowered 'to inquire into the intrinsic correctness of the board's decision.'" ***Gordon v. Tenn. Bd. of Prob. and Parole,*** No. M2006-01273-COA-R3-CV, 2007 WL 2200277, at *2 (Tenn. Ct. App. July 30, 2007) (quoting *Willis v. Tenn. Dep't of Corr.,* 113 S.W.3d 706, 712 (Tenn. 2003)). Our Supreme Court has held that a common-law writ of certiorari may be used to remedy: "(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion." ***Gordon,*** 2007 WL 2200277, at *2 (citing *Willis,* 113 S.W.3d at 712). The reviewing court does not weigh the evidence, but must uphold the lower tribunal's decision if the lower tribunal "acted within its jurisdiction, did not act illegally or arbitrarily or fraudulently, and if there is any material evidence to support the [tribunal's] findings." ***Jackson,*** 2006 WL 1547859, at *3 (citing *Watts v. Civil Serv. Bd. of Columbia,* 606 S.W.2d 274, 276-77 (Tenn. 1980); ***Davison v. Carr,*** 659 S.W.2d 361, 363 (Tenn. 1983)). "A board's determination is arbitrary and void if it is unsupported by any material evidence." ***Gordon,*** 2007 WL 2200277, at *2 (citing *Watts,* 606 S.W.2d at 277). Whether there existed material evidence to support the board's decision is a question of law which should be determined by the reviewing court based on the evidence submitted. ***Id.*** (citing *Watts,* 606 S.W.2d at 277).

This Court must review a trial court's conclusions of matters of law *de novo* with no presumption of correctness. ***Gordon,*** 2007 WL 2200277, at *2 (citing Tenn. R. App. P. 13(d); *Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn. 2000)). Because our review of the board's determination "is no broader or more comprehensive than that of the trial court with respect to evidence presented before the [b]oard[,]" ***Id.*** (citing *Watts,* 606 S.W.2d at 277), this Court "will not 'inquire into the intrinsic correctness of the [b]oard's decision,' but will uphold the decision if it was reached lawfully and in a constitutional manner." ***Id.*** (quoting *Hopkins v. Tenn. Bd. of Paroles and Prob.,* 60 S.W.3d 79, 82 (Tenn. Ct. App. 2001)).

## IV. DISCUSSION

### A. Due Process

The Fourteenth Amendment's Due Process Clause protects individuals by guaranteeing fair procedure. *Littles v. Campbell*, 97 S.W.3d 568, 572 (Tenn. Ct. App. 2002) (citing *Zinermon v. Burch*, 494 U.S. 113 (1990)). "'In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'" *Id.* (quoting *Zinermon*, 494 U.S. at 125). A claim is not actionable unless the State fails to provide due process; thus, we must first determine what process is due, if any, and whether such process has been afforded. *Id.* (citation omitted).

The United States Supreme Court has stated that only those restraints to a prisoner's liberty interest which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" are actionable under the Due Process clause. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "Once a court determines that the restraints imposed upon the prisoner's liberty are indeed 'atypical' and a 'significant hardship,' the court must next determine what type of process is constitutionally required." *Littles*, 97 S.W.3d at 572. Pursuant to *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Due Process Clause requires that inmates subject to disciplinary proceedings be afforded: "(1) written notice of any charges made against the prisoner at least twenty-four (24) hours before a hearing is held; (2) the opportunity to present witnesses; (3) an impartial tribunal; and (4) a written statement from the tribunal indicating what evidence the factfinder relied upon and the reasons for the disciplinary actions taken." *Id.* (citing *Nevills v. S. Cent. Corr. Disciplinary Bd.*, No. M2000-02324-COA-R3-CV, 2001 WL 1117066, at *13 (Tenn. Ct. App. Sept. 25, 2001)).

"[E]ven if a state prisoner is not entitled to due process protections in a disciplinary proceeding, the inmate may nevertheless assert a claim under a common-law writ of certiorari that the prison disciplinary board otherwise acted illegally or arbitrarily in failing to follow TDOC's Uniform Disciplinary Procedures. *Irwin v. Tenn. Dep't of Corr.*, 244 S.W.3d 832, 835 (Tenn. Ct. App. Aug. 13, 2007) (citing *Willis*, 113 S.W.3d at 713). "The inmate may be entitled to relief under a common-law writ of certiorari if he demonstrates that the disciplinary board failed to adhere to the Uniform Disciplinary procedures and that its failure to do so resulted in substantial prejudice to the inmate." *Id.* (citing *Gore v. Tenn. Dep't of Corr.*, 132 S.W.3d 369, 378 (Tenn. Ct. App. 2003); *Willis*, 113 S.W.3d at 713-14).

In this case, Appellant contends that "numerous things[,]" and "most obvious[ly] . . . the five year revocation of his sentence credits" constitute an atypical or significant hardship. Again, Appellant received the following punishment: ten days punitive

segregation, a $5.00 fine, twelve months of package restriction, $646.91 restitution for medical expenses, involuntary administrative segregation placement ("IAS"), and a five-year sentence extension through the loss of sentence credits. "[T]he loss of previously earned sentence reduction credits has been found to implicate an interest sufficient to invoke due process." *Seals v. Bowlen*, No. M1999-00997-COA-R3-CV, 2001 WL 840271, at *6 (Tenn. Ct. App. July 26, 2001) (citing *Greene v. Tenn. Dep't of Corr.*, No. 01A01-9608-CH-00370, 1998 WL 382204, at *3 (Tenn. Ct. App. July 10, 1998) (footnote omitted)). However, Appellant's other forms of punishment do not constitute an "atypical" and "significant hardship." *Anglin v. Turner*, No. E2006-01764-COA-R3-CV, 2007 WL 914708, at *3 (Tenn. Ct. App. Mar. 8, 2007) (six month package restriction not atypical); *Seals v. Bowlen*, No. M1999-00997-COA-R3-CV, 2001 WL 840271, at *6 (Tenn. Ct. App. July 26, 2001) ($5.00 fine[1] and ten day punitive segregation not atypical); *Littles*, 97 S.W.3d at 573 (administrative segregation for an undetermined period of time not atypical). Because his liberty interests have been implicated in this case, we will address not only whether TDOC Policy was followed, but also whether Appellant was afforded the due process requirements set forth in *Wolff*.

## B. Notice of Charges

On appeal, Appellant alleges that he was never properly notified of the charges against him. "[T]o give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact[,]" *Wolff*, 418 U.S. at 564 (citing *In re Gault*, 387 U.S. 1, 33-34, and n.54 (1967)), "advance written notice of the claimed violation" must be given to inmates charged with disciplinary violations. *Id.* at 563. Moreover, TDOC Policy 502.01 (VI)(E)(3), regarding the initiation of a formal disciplinary action, provides in part:

> An employee (not necessarily the reporting employee) shall read the report to the inmate, advise him/her of their rights, and request the inmate to sign acknowledging receipt of the report. If the inmate refuses to sign, the result shall be noted on the form. One copy shall be given to the inmate at that time and a copy should be provided to the inmate advisor or appropriate staff member. The original shall be forwarded to the disciplinary hearing officer for processing.

Appellant first argues that he never received the required report. He claims:

---

[1]Inmates do have a property interest in the funds in their trust accounts; however "the 'de minimus nature' of a $5.00 fine makes 'it immune from procedural due process requirements.'" *Irwin v. Tenn. Dep't of Corr.*, 244 S.W.3d 832, 835 n.2 (Tenn. Ct. App. Aug. 13, 2007) (quoting *Willis*, 113 S.W.3d at 711).

[Appellant] submitted to the Board the form at the hearing that was supposedly provided to him. Said form was blank and there was no indication who the prison employee was, whether or not that person was the reporting employee, or otherwise, and said form failed to substantiate that he was advised of the charges against him or advised of his rights. At the hearing, [Appellant] denied that he was ever given such a report, and furthermore asked the Board to inquire as to the signature of the person in regard to the form that they had on file and whether or not that individual actually read the report to the inmate, advised him or his rights or even asked him to sign the form.

The record before us contains a "Disciplinary Report" stating that "[b]ased on the results of an internal investigation . . . [Appellant] [is] charged with assault on [another inmate] . . . on October 9, 2007 in which [the victim] received multiple stab wounds requiring treatment at institutional infirmary and outside hospital." The report further indicates that at 5:33 on October 16, 2007, C/O Boyd delivered a copy of the report to Appellant and advised him of his rights, but Appellant refused to sign an acknowledgment of such. We find that Appellant was properly notified of the charges against him.

### C.  Statement of Evidence

Appellant also claims that he was never given "a written statement of the fact finders as to the evidence relied on." The requirement that factfinders prepare a written statement "'as to the evidence relied on and reasons for the disciplinary action'" "protect[s] the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding[,] . . . [and it] helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly." *Wolff*, 418 U.S. at 564-65 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (U.S. 1972)).

The "Disciplinary Continuation" form presents a condensed transcript of the disciplinary proceedings. This "written statement" shows that at Appellant's hearing, officer Foster testified that both pod officer Carr and the victim identified Appellant as one of four inmates who committed the assault. Because the form clearly recites the evidence relied upon and the Board's reasoning for its decision, we find this issue without merit.

### D.  Ability to Call Witnesses

Next, Appellant claims that he was denied the right to call both the assault victim and pod officer Carr as witnesses at the hearing. Appellant cites article 1, section 9 of the Tennessee Constitution which provides that "in all criminal prosecutions, the accused ha[s]

the right to . . . meet the witnesses face to face." **Tenn. Const. art. 1, § 9**. However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." ***Wolff v. McDonnell***, 418 U.S. 539, 556 (1974) (citing *Morrissey*, 408 U.S. at 488).

Pursuant to TDOC Policy 502.01(VI)(L)(4)(c), an accused inmate has the right to cross-examine witnesses and the right to "present the testimony of relevant witness(es), unless allowing the witness to appear would pose a threat to institutional safety or order." However, the inmate must request the presence of witnesses:

> (1) An inmate who wishes to have witness(es) (inmate or staff) present to testify on his/her behalf at the hearing shall complete an Inmate Witness Request, CR-3511, and submit it to the chairperson/hearing officer at least twenty-four (24) hours prior to the hearing. The chairperson/hearing officer shall indicate on the form whether the inmate's request has been approved or denied and, if a requested witness is denied, the specific reason(s) for not permitting the attendance of the witness requested by an inmate.

> (2) If an inmate fails to request a witness on CR-3511 prior to the hearing, the chairperson/hearing officer may still allow the witness to testify. Factors to be considered in making such a decision include the witness, the nature of the witness' testimony and how difficult it would be to obtain the witness' testimony.

> (3) An inmate may submit a written witness statement when the personal appearance of a witness has been denied.

> (4) When a witness cannot be physically present at a hearing, the chairperson/hearing officer may allow his/her testimony to be given by
telephone, provided a speaker telephone is used so that all persons participating in the hearing can hear the testimony.

**TDOC Policy 502.01(VI)(L)(4)(d)**.

Both the "Disciplinary Hearing Report Summary" and the "Disciplinary Continuation" form recite that Appellant failed to complete a witness request form. Appellant does not suggest that he was unable to do so. Instead, he simply argues that he "did not execute a form as required waiving []his right to call witnesses," without citing authority for this "requirement." TDOC Policy 502.02(VI)(L)(4)(a)(3) provides that "[t]he board chairperson/hearing officer shall make the following inquiries (the answer(s) to which shall be stated in the findings of the board): . . . [w]hether the inmate waived the right to call a witness(es) in his/her behalf[.]" The policy does not suggest that an inmate must execute a written waiver in order to waive his or her right to call witnesses. By acknowledging on both

-7-

of the aforementioned forms that Appellant failed to request the presence of any witnesses, the Board indicated that Appellant had "waived the right to call a witness(es)[,]" in compliance with TDOC Policy.

As we stated above, TDOC Policy 502.01(VI)(L)(4)(d) provides that inmates who "wish[ ] to have witness(es) (inmate or staff) present to testify on his/her behalf at the hearing *shall* complete an Inmate Witness Request, CR-3511[.]" (emphasis added). The record demonstrates that Appellant failed to submit a form requesting the presence of any witness prior to the hearing. At the hearing, Appellant's inmate advisor asked if pod officer Carr could be brought into the hearing, but his request was denied, and there is no indication that he requested to call the assault victim. When an inmate fails to request a witness' presence prior to the hearing, "the chairperson/hearing officer *may* still allow the witness to testify." **TDOC Policy 502.01(VI)(E)(3)(d)(2)**. It is within the chairperson's discretion to allow testimony when a CR-3511 form has not been completed. Furthermore, "when the personal appearance has been denied[,]" an inmate may submit a written witness statement, which Appellant failed to do. **TDOC Policy 502.01(VI)(E)(3)(c)(6)(3)**. In sum, we find that TDOC Policy was complied with and Appellant's due process rights were not violated.

### E. Sufficiency of Evidence

As we pointed out above, at the disciplinary hearing, officer Foster testified that both pod officer Carr and the victim had identified Appellant as one of four inmates who committed the assault. Appellant argues that officer Foster's testimony was "gross hearsay," and that the only "actual evidence was the statement by the inmate [Garion] Lewis who admitted that he had had an argument with the victim, and that he was the only one in question that assaulted the victim[.]"

"[T]he Uniform Disciplinary Procedures differ in some significant ways from the procedures that bind our criminal courts, proceedings which may result in the initial loss of freedom. For example, guilt of a disciplinary infraction does not have to be proven beyond a reasonable doubt, but only by a preponderance of the evidence." *Keen*, 2008 WL 539059, at *5 (citation omitted). Furthermore, a disciplinary board may "consider any evidence it finds reliable, whether or not such evidence would be admissible in a court of law." *Id.* (citation omitted). This Court may not reweigh the evidence, "but must affirm the Board's decision if there is any material evidence to support it." *Pirtle v. Tenn. Dep't of Corr.,* No. W2006-01220-COA-R3-CV, 2007 WL 241027, at *5, (Tenn. Ct. App. Jan. 30, 2007) (citing *Watts,* 606 S.W.2d at 276-77).

In his affidavit, which was introduced into evidence at the hearing, inmate Lewis assumed full responsibility for the assault, declaring that Appellant "[i]s not the one to blame

for what I have done." However, this was not the *only* evidence presented, as Appellant suggests. Again, officer Foster testified that both the victim and another officer implicated Appellant in the assault, and the Board properly considered this testimony. We find sufficient evidence to support the Board's decision.

## V.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to Appellant, Charles Patterson, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.