FILED
01/30/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 1, 2017

## ERIC BERNARD HOWARD v. TURNEY CENTER DISCIPLINARY BOARD ET AL.

**Appeal from the Chancery Court for Hickman County**
**No. 16-CV-5773      Joseph A. Woodruff, Judge**

_____

**No. M2017-00230-COA-R3-CV**

_____

Eric Bernard Howard, an inmate at the Turney Center Industrial Complex, was charged with the disciplinary offense of defiance. The conduct at issue occurred at the institution's medical clinic. Howard became angry, used profanity, and physically struck clinic property. After a hearing, he was found guilty by "alternate disciplinary officer" Rachel McCauley. Howard filed a petition for common law writ of certiorari with the trial court, alleging that he was denied due process at his hearing. He further asserted that the governing Uniform Disciplinary Procedures of the Tennessee Department of Correction (TDOC) were not followed. He says this resulted in substantial prejudice to him. The trial court found no due process violation, and ruled that any deviation from the Uniform Disciplinary Procedures was minimal and did not result in substantial prejudice. The trial court dismissed the petition. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which W. NEAL MCBRAYER and ARNOLD B. GOLDIN, JJ., joined.

Eric Bernard Howard, Only, Tennessee, appellant, pro se.

Herbert H. Slatery, III Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, and Charlotte Davis, Assistant Attorney General, Nashville, Tennessee, for the appellees, Turney Center Disciplinary Board, Rachel McCauley, Kevin Genovese, and Derrick Schofield.

1

# OPINION

## I.

TDOC's disciplinary report alleges that "on the evening of March 24, 2016 inmate Eric Howard . . . became disruptive with medical staff to the point where he was using profanity and he was banging on stationary property inside the clinic." He was charged with defiance. Howard was given a copy of the disciplinary report on March 31, 2016. A hearing before the alternative hearing officer, respondent Cpl. Rachel McCauley, took place on April 1, 2016. Two persons testified: Howard, and Internal Affairs officer Sgt. Dustin Mackin, who presented evidence deemed confidential by TDOC – evidence that TDOC says supported the charge and conviction. Cpl. McCauley found him guilty of defiance. The discipline imposed on Howard was five days in punitive segregation, a nine-month package restriction, and a four dollar fine.

He appealed to the warden, and then to the TDOC commissioner, both of whom upheld his conviction. Having exhausted his administrative remedies, Howard filed a petition for common law writ of certiorari in the trial court. He alleged that (1) Cpl. McCauley was not authorized to hear his case under the Uniform Disciplinary Procedures; (2) his hearing was held 21.5 hours after he was notified of the charge, contrary to the Procedures' requirement of a minimum 24 hours; and (3) the confidential information was not properly presented under the Procedures. The State did not oppose the petition, and the trial court granted it. Respondents moved for judgment on the record. The trial court found that the hearing officer was authorized to hear the case, the 21.5 hour notice was a minor deviation from the Uniform Disciplinary Procedures that did not substantially prejudice Howard, and that the confidential evidence was properly presented at the hearing. The court granted the motion and dismissed the petition. Howard timely filed a notice of appeal.

## II.

The issue presented on appeal is whether the alleged procedural defects at Howard's hearing constitute deviations from the Uniform Disciplinary Procedures that resulted in a violation of his constitutional due process rights or substantial prejudice to him.

## III.

As this Court has recently observed:

2

The common-law writ of certiorari is the procedural vehicle prisoners may use to obtain a review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals. **Willis v. Tenn. Dep't of Corr.**, 113 S.W.3d 706, 712 (Tenn. 2003); *see* Tenn. Code Ann. § 27–8–101 (providing that the writ may be granted where an inferior tribunal, board, or officer exercising judicial functions exceeds jurisdiction or acts illegally and no other plain, speedy, or adequate remedy is available); **Davison v. Carr**, 659 S.W.2d 361, 363 (Tenn. 1983) ("Common law certiorari is available where the court reviews an administrative decision in which that agency is acting in a judicial or quasi-judicial capacity."). . . .

A reviewing court is not permitted to "(1) inquire into the intrinsic correctness of the lower tribunal's decision, (2) reweigh the evidence, or (3) substitute [its] judgment for that of the lower tribunal" when considering a petition for a common law writ of certiorari. **Keen**, 2008 WL 539059 at *2 (citations omitted); *see also* **Heyne v. Metro. Nashville Bd. of Pub. Educ.**, 380 S.W.3d 715, 729 (Tenn. 2012); **Willis**, 113 S.W.3d at 712. Rather, the scope of review is limited to determining "whether the disciplinary board exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily." **Willis**, 113 S.W.3d at 712 (citing **Turner v. Tenn. Bd. of Paroles**, 993 S.W.2d 78, 80 (Tenn. Ct. App. 1999)); **South v. Tenn. Bd. of Paroles**, 946 S.W.2d 310, 311 (Tenn. Ct. App. 1996)). This involves a question of law, not of fact. **Harding Acad. v. Metro. Gov't of Nashville & Davidson Cnty.**, No. M2004–02118–COA–R3–CV, 2006 WL 627193, at *4 (Tenn. Ct. App. Sept. 25, 2006). " 'The scope of review by the appellate courts is no broader or more comprehensive than that of the trial court with respect to evidence presented before the Board.' " **Id**. (quoting **Watts v. Civ. Serv. Bd. for Columbia**, 606 S.W.2d 274, 277 (Tenn. 1980)).

A common law writ of certiorari can be used to correct "(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and

palpable abuses of discretion." ***Willis***, 113 S.W.3d at 712 . . . In other words, a trial court's review is focused on the manner in which the lower tribunal's decision was reached rather than its intrinsic correctness. ***Garrard v. Tenn. Dep't of Corr.***, No. M2013–01525–COA–R3–CV, 2014 WL 1887298, at *4 (Tenn. Ct. App. May 8, 2014) (citing ***Powell v. Parole Eligibility Rev. Bd.***, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994)); ***Keen***, 2008 WL 539059, at *2 (citing ***Hall v. McLesky***, 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001)). If the tribunal reaches its decision in a manner that is either unlawful or unconstitutional, the decision is subject to judicial review. ***Powell***, 879 S.W.2d at 873.

***Snow v. Turney Ctr. Disciplinary Bd.***, No. M2016-01148-COA-R3-CV, 2016 WL 7409846, at *4-5 (Tenn. Ct. App., filed Dec. 22, 2016).

## IV.

We first address Howard's due process argument. In ***Willis***, the Tennessee Supreme Court made the following pertinent statements regarding the due process interests of an inmate facing disciplinary proceedings:

The United States Supreme Court has addressed, on several occasions, the issue of when a prisoner is deemed to have been deprived of a liberty interest. In ***Sandin*** [***v. Conner***], the Court held that a liberty interest is not created unless the disciplinary restraints being imposed on a prisoner are atypical in comparison to the "ordinary incidents of prison life." ***Sandin***, 515 U.S. at 483–84, 115 S.Ct. 2293 [1995]. In that case, the Court held that thirty days of punitive segregation was not a dramatic departure from the basic conditions of the prisoner's indeterminate sentence, and therefore, the prisoner was not entitled to due process protection. ***Sandin***, 515 U.S. at 486, 115 S.Ct. 2293.

Thus, pursuant to ***Sandin***, we find that Tharpe was not deprived of a liberty interest when he was punished with punitive and administrative segregation.

***Willis***, 113 S.W.3d at 711. The ***Willis*** Court further held that "State prisoners in Tennessee have a property interest in the funds in their prison trust fund accounts," ***id.***,

4

but found that "the de minimus nature" of the five-dollar fine imposed in that case "makes it immune from procedural due process requirements." *Id.* at 712.

On numerous occasions, this Court has followed the principles set forth in *Willis* and *Sandin* to hold that disciplinary restraints such as those imposed on Howard in this case do not implicate a liberty interest because they are not "atypical in comparison to the 'ordinary incidents of prison life.' " *Willis*, 113 S.W.3d at 711; *see, e.g.*, *Walton v. Tenn. Dep't of Corr.*, No. W2015-01336-COA-R3-CV, 2016 WL 3078838, at *7 (Tenn. Ct. App., filed May 23, 2016); *Bonner v. Cagle*, No. W2015-01609-COA-R3-CV, 2016 WL 97648, at *6 (Tenn. Ct. App., filed Jan. 7, 2016); *Himes v. Tenn. Dep't of Corr.*, No. M2011-02546-COA-R3-CV, 2012 WL 7170480, at *4 (Tenn. Ct. App., filed Dec. 6, 2012). In *Bonner*, we held that the imposition of ten days punitive segregation, three months visitation cancellation, a nine-month package restriction, and a four-dollar fine were "not sufficient punishments to constitute 'a dramatic departure from the basic conditions' of . . . Bonner's sentence." 2016 WL 97648, at *6. The punishment in *Bonner* is very similar, albeit slightly harsher, than the discipline imposed on Howard in the present case. Under the above-cited authorities, we hold that the disciplinary restraints imposed here do not implicate a liberty interest protected by due process.

## V.

Independent of his due process claims, Howard asserts that TDOC failed to follow its Uniform Disciplinary Procedures. *Willis*, 113 S.W.3d at 713; *Patterson v. Tenn. Dep't of Corr.*, No. W2009-01733-COA-R3-CV, 2010 WL 1565535, at *2 (Tenn. Ct. App., filed Apr. 10, 2010) ("[E]ven if a state prisoner is not entitled to due process protections in a disciplinary proceeding, the inmate may nevertheless assert a claim under a common-law writ of certiorari that the prison disciplinary board otherwise acted illegally or arbitrarily in failing to follow TDOC's Uniform Disciplinary Procedures."). As this Court stated in *Bonner*,

> The Uniform Disciplinary Procedures exist "[t]o provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates." TDOC Policy No. 502.01(II); *Meeks v. Tenn. Dep't of Corr.*, No. M2007–01116–COA–R3–CV, 2008 WL 2078054 at *3 (Tenn. Ct. App. May 15, 2008). Minor deviations from the procedures will not warrant dismissal of the disciplinary action unless the prisoner demonstrates "substantial prejudice as a result and the error would have affected the disposition of the case." TDOC Policy No. 502.01(V); *Meeks*, at *3. "To trigger

judicial relief, a departure from the Uniform Disciplinary Procedures must effectively deny the prisoner a fair hearing." **Jeffries v. Tenn. Dep't of Corr.**, 108 S.W.3d 862, 873 (Tenn. Ct. App. 2002). Thus, an inmate may be entitled to relief under a common law writ of certiorari if he demonstrates that the disciplinary board failed to adhere to the Uniform Disciplinary Procedures and that its failure to do so resulted in substantial prejudice to the inmate. **Irwin v. Tenn. Dep't of Corr.**, 244 S.W.3d 832, 835 (Tenn. Ct. App. 2007).

2016 WL 97648, at *7.

## A.

Howard's first claim is that the disciplinary hearing officer who presided over his case was not authorized by the Uniform Procedures. We disagree. The procedures provide as follows regarding who may hear and decide disciplinary proceedings:

> A. <u>The Disciplinary Board</u>  1. Each Warden shall appoint a minimum of six institutional employees who shall serve as members of the disciplinary board to hear all Class A disciplinary offenses and Class B offenses for which accumulated sentence credits may be taken, i.e., where good conduct credits are applied to an inmate's sentence.
>
> *       *       *
>
> B. <u>Disciplinary Hearing Officer (Class B and C)</u>  1. The disciplinary hearing officer shall be designated to hear Class C disciplinary offenses and those Class B Disciplinary offenses for which no accumulated sentence credits may be taken.

TDOC Policy No. 502.01(VI) (underlining in original). A "disciplinary hearing officer" is defined as "[a]n employee appointed by the Warden to serve as the chairperson of the disciplinary board and to hear Class B and C disciplinary offenses." **Id.** No. 502.01(IV)(D). The procedures further state that "[a]t least one alternate DHO shall be appointed by the Warden." **Id.**

Howard's charge of defiance is a Class B offense. His punishment did not include a loss of good conduct credits, so a disciplinary hearing officer was the proper person to

6

preside at the hearing. The State asserts that Cpl. McCauley was duly appointed by the warden as an alternate disciplinary hearing officer. Howard disputes this, arguing that he was not presented with any proof establishing her appointment. We find nothing in the Uniform Disciplinary Procedures that provides a right to an inmate to make such a demand of TDOC, nor that requires TDOC to provide such information. The trial court specifically found that "Corporal McCauley was appointed as an alternate disciplinary hearing officer." The evidence does not preponderate against this conclusion.

**B.**

Secondly, Howard asserts that he was not notified of the charge against him a full 24 hours before his hearing. The procedures provide that "[a] disciplinary hearing shall not be held in less than 24 hours after the inmate has been charged with a disciplinary [offense] unless the inmate has requested a prompt disposition and waives his/her right to the 24-hour notice in writing." TDOC Policy No. 502.01(VI)(A)(6)(c). The State agrees that only 21.5 hours elapsed between the notice and the hearing, but argues that this is a minor deviation that did not result in substantial prejudice to Howard, nor did it deny him a fair hearing under the circumstances.

In *Willis*, the Supreme Court addressed an inmate's similar claim of inadequate notice and stated:

> It is unclear from the petition to what extent, if any, the petitioners received notice of the charges against them. . . . If the petitioners received no notice of the charges against them, this would be patently prejudicial; if they did receive notice, but that notice was somehow defective, its prejudicial nature would depend on the particular shortcomings of the challenged notice.

113 S.W.3d at 713. In the present case, Howard has not pointed to anything in the record that indicates he was substantially prejudiced by the denial of two and a half more hours to prepare for his hearing. He did not object to insufficient notice before the hearing officer, nor in his appeals to the warden and commissioner.

As we have recently observed, the Uniform Procedural Procedures accord an inmate the following rights at his hearing:

> (1) The right to decline to testify. It shall be the burden of the reporting employee to prove guilt by a preponderance of the evidence.

7

(2) To have the evidence against him/her presented first. The board/hearing officer shall consider all evidence which it finds to be reliable, whether or not such evidence would be admissible in a court of law.

(3) To cross-examine any witness (except a confidential source) who testified against him/her and to review all adverse documentary evidence (except confidential information).

(4) To have the reporting official to the alleged infraction present and testifying at the hearing. . . . Even if such an appearance is waived by the inmate, the employee may appear and testify at the hearing.

(5) The right to testify in his/her own behalf after all evidence has been presented.

(6) The right to present the testimony of relevant witness(es), unless allowing the witness to appear would pose a threat to institutional safety or order.

*Hanley v. Turney Ctr. Disciplinary Bd.*, No. M2016-01223-COA-R3-CV, 2016 WL 6995481, at *6 (Tenn. Ct. App., filed Nov. 30, 2016), quoting TDOC Policy No. 502.01(VI)(L)(4)(c).

In the present case, Howard was allowed to testify on his own behalf, and he was present during the testimony of the reporting officer. There is no transcript of the hearing in the record. In order to call witnesses, an inmate is required to fill out and submit an Inmate Witness Request on a form CR-3511. The summary prepared by the hearing officer states that no CR-3511 form was submitted. Furthermore, TDOC Policy No. 502.01(VI)(J)(1) provides an inmate with the right to request a continuance. Howard did not make such a request. In short, there was an erroneous deviation from the Uniform Disciplinary Procedures when Howard was allowed only 21.5 hours following the notice of the charge against him, instead of the mandated 24 hours. Under the particular circumstances of the present case, however, the deviation was relatively minor, and the error did not cause substantial prejudice to Howard, nor did it deny him a fair hearing. The trial court did not err in denying Howard relief on this ground.

8

**C.**

Finally, Howard argues that the confidential information provided to the hearing officer was not presented in accordance with the Uniform Disciplinary Procedures. As can be seen from Policy No. 502.01(VI)(L)(4)(c)(3) quoted above, that section creates an exception to an inmate's rights to cross-examine a witness and to review adverse documentary evidence when there is confidential information involved. In this case, the evidence supporting the charge of defiance was deemed to be confidential. The Uniform Disciplinary Procedures require the following procedures in such a case:

> When the disciplinary hearing officer/chairperson determines that he/she should receive testimony from a confidential source whose identity cannot be disclosed due to either a fear of reprisal, or a breach of security information, or determines that he/she should receive evidence of a confidential/security sensitive nature, it shall be the responsibility of the disciplinary hearing officer to independently access and verify the reliability of the informant's testimony and/or the confidential security sensitive evidence.
>
> Where the reliability of the confidential informant and/or the evidence of security sensitive nature has not been independently verified, such testimony or evidence shall not be considered by the disciplinary board/hearing officer in the disposition of the disciplinary charge(s).
>
> Whenever confidential information or confidential security sensitive evidence is utilized by the disciplinary hearing officer/chairperson as a basis for its decision, the TDOC Contemporaneous Record of Confidential Informant Reliability, CR-3510, shall be completed to document the factual basis for the disciplinary hearing officer's/chairperson's finding that the informant and/or security sensitive evidence was reliable. . . . This form shall be considered confidential and kept as a non-public access record in an area designated by the Warden.

TDOC Policy No. 502.01(VI)(L)(4)(e-g).

The record before us contains the confidential information, and an affidavit of reporting officer Dustin Mackin, in which he explains why the information is

9

confidential, attests that the copies provided are true and accurate, and confirms that he provided a Form CR-3510 as required. The properly completed CR-3510 form is also in the record. However, on the disciplinary hearing summary report, under "witnesses against offender," there are three "yes/no" boxes to be checked, indicating whether a written statement was submitted, a Form CR-3510 completed, and a Form CR-3510 was "received by disciplinary board." The hearing officer checked "no" on those three boxes. This is obviously a clerical error. Notwithstanding this error, Howard argues that he was prejudiced by it.

It is abundantly clear that the hearing officer, through accident or oversight, mistakenly checked the wrong three boxes on the form. This conclusion is supported by several things in the record. First, in the hearing summary report, under the heading "description of physical evidence introduced," the hearing officer wrote "confidential information" and indicated that the internal affairs report was available. Under "findings of fact and specific evidence relied upon to support those findings," the officer wrote "due to report and confidential information provided by IA Dustin Mackin." Second, as noted, the record includes Mackin's affidavit, which attests that he provided the required form. Third, the CR-3510 form itself bears the signature of the hearing officer, dated the day of the hearing, wherein the hearing officer affirmed that

> the reliability of the informant was verified in the following manner: [s]worn statement before the board by the investigating officer, Dustin Mackin, that he believes the confidential informant(s) information to be reliable because it has been independently corroborated on specific material points.

It thus clearly appears that the protocol requirements of TDOC Policy No. 502.01(VI)(L)(4)(e-g) regarding confidential information have been fully complied with. The clerical error did not prejudice Howard in any way, and does not provide him an avenue for relief.

## VI.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Eric Bernard Howard. The case is remanded for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE

10