# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 29, 2025 Session

## STATE OF TENNESSEE v. JAMIE PAUL CLICK

**Appeal from the Circuit Court for Sevier County**
**No. 18116-II     James L. Gass, Judge**

---

### No. E2024-00196-CCA-WR-CO

---

In 2014, a Sevier County jury convicted the Defendant, Jamie Paul Click, of alternate counts of selling or delivering one-half gram of heroin within 1,000 feet of a public elementary school, Class A felonies, in addition to other offenses. The trial court merged the two drug-free zone convictions and sentenced the Defendant to forty years as a Range II, multiple offender with mandatory one-hundred percent service of the minimum sentence in the range. In 2022, following amendments to the Drug-Free Zone Act, the Defendant filed a motion for resentencing pursuant to Tennessee Code Annotated section 39-17-432(h), which the trial court denied following an evidentiary hearing. The Defendant appeals, arguing that the trial court's ruling was a plain and palpable abuse of discretion. Upon our review of the oral arguments, applicable law, and the briefs of the parties, we deny the Defendant's request for a writ of certiorari and affirm the judgment of the trial court.

**Writ of Certiorari; Judgment of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TOM GREENHOLTZ, JJ., joined.

Wesley D. Stone, Knoxville, Tennessee, for the appellant, Jamie Paul Click.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and George C. Ioannides, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Trial Proceedings

A Sevier County grand jury returned a seven-count presentment against the Defendant, charging him with alternate counts of selling or delivering heroin (0.5 grams), a Schedule I controlled substance, on September 5, 2012, within a drug-free zone (Counts 1 and 2), Class A felonies; one count of casually exchanging marijuana (5.08 grams), a Schedule VI controlled substance, on September 10, 2012 (Count 3), a Class A misdemeanor; alternate counts of selling or delivering heroin (0.7 grams) on September 10, 2012 (Counts 4 and 5), Class B felonies; and alternate counts of selling or delivering heroin (0.7 grams) on September 11, 2012 (Counts 6 and 7), likewise Class B felonies. *See* Tenn. Code Ann. §§ 39-17-417, -418, -432. The Defendant proceeded to a jury trial in August 2014.

The proof at trial established that multiple controlled drug purchases took place during a one-week period in September 2012 and that those transactions were conducted by Sevierville Police Department ("SPD") Detective Josh Turner using a confidential informant ("CI"). *State v. Click*, No. E2015-01769-CCA-R3-CD, 2017 WL 1189750, at *1 (Tenn. Crim. App. Mar. 30, 2017), *abrogated by State v. Patterson*, 564 S.W.3d 423, 429-34 (Tenn. 2018). According to the trial evidence, the Defendant originally solicited the CI, with whom he was acquainted, at a Sunoco gas station in Sevierville by asking the CI what type of drugs he was using at the time, which prompted the men to exchange telephone numbers. *Id.* at *1. Thereafter, the CI contacted the Defendant for the purpose of buying drugs, and the men established the amount of drugs, the price, and the meeting places prior to each transaction. *Id.* *2-4. During these transactions occurring on September 5, 10, and 11, 2012, the Defendant was accompanied by Heather Arwood. *Id.* The CI testified that he saw additional bags of heroin in the Defendant's lap during the September 10 heroin transaction, that the Defendant instructed him on how to inject the heroin, and that the Defendant tried to solicit him to help sell the Defendant's drugs. *Id.* at *4. The jury convicted the Defendant as charged of all seven offenses.[1] *Id.*

---

[1] The Defendant's activities in this case also resulted his prosecution in Knox County and conviction for conspiracy to possess with the intent to sell or deliver 150 grams or more of heroin within 1,000 feet of a drug-free zone. The Defendant filed a resentencing motion in the Criminal Court for Knox County, which, like the one *sub judice*, was denied by the trial court and is now on appeal before this court. The court's opinion in that case is being released concurrently herewith.

Relative to the two drug-free zone offenses committed on September 5, 2012 (Counts 1 and 2), which are the subject of the Defendant's resentencing motion, the proof at trial reflected that the original meeting place was scheduled at a local Kroger, but after some time had passed and the Defendant had not shown at that location, the CI phoned the Defendant to inquire of his whereabouts. *Id.* at *2. The Defendant told the CI that he was "parked behind the Clarion Inn [and] that he was having truck trouble." *Id.* As soon as the CI began driving towards the Clarion Inn, he received a call from Ms. Arwood, who told him to meet the Defendant at the Taco Bell/Exxon on Winfield Dunn Parkway. *Id.* Once all parties had arrived at the Taco Bell/Exxon, the men exchanged twenty-five dollars for a small bag containing a powdery substance, which was later determined to be one-half gram of heroin. *Id.*

Regarding the distance of the drug transaction from Cattlesburg Elementary School, testimony established that the Sevier County School Board owned two tracts of land involving the school—the initial tract of land being the school and school's grounds, and the second parcel being a right-of-way that was later deeded to the school board. Located on this second parcel was the school's sign and the main entrance road, which was the primary method of ingress and egress from the school, including the route traveled by school buses. *Id.* at *2-3. The school resource officer "routinely patrolled the school's grounds, including the right-of-way, and . . . the school board maintained the right-of-way." *Id.* at *3. Two certified deeds depicting the school board's ownership of these parcels were entered into evidence. *Id.* at *2. Detective Turner measured from various locations on these two parcels to the drug transaction's location in the Taco Bell/Exxon parking lot, and his measurements reflected distances of 185 feet, 250 feet, 500 feet, 750 feet, and 1,000 feet. *Id.* at *3. According to Detective Turner, the 1,000-feet measurement was inside the initial tract of land comprising the school and school's grounds and the other measurements were on the school's right-of-way parcel. *Id.*

Following a sentencing hearing, the trial court classified the Defendant as a Range II, multiple offender and merged the three delivery convictions with the corresponding sale convictions. *Id.* at *18. As required by the Drug-Free Zone Act ("the Act") in effect at the time, the trial court sentenced the Defendant by enhancing the felony for the drug-free zone offenses to one classification higher. *See* Tenn. Code Ann. § 39-17-432(b) (Supp. 1995). Accordingly, the Defendant's convictions for the first heroin transaction, merged Counts 1 and 2, were enhanced one felony classification from a Class B to a Class A felony.

Ultimately, the trial court imposed an eleven-month and twenty-nine-day sentence for the marijuana conviction, the maximum term of forty years for the Class A felony heroin transaction, and twenty years for each of the Class B felony heroin transactions.

*Click*, 2017 WL 1189750, at \*18; *see also* Tenn. Code Ann. § 40-35-112(b)(1), (2) (establishing a Range II sentence for a Class A felony as not less than twenty-five nor more than forty years and for a Class B felony as not less than twelve nor more than twenty years). The trial court aligned the sentences for the three heroin transactions consecutively and the marijuana sentence concurrently with the first heroin transaction sentence, resulting in a total effective sentence of eighty years' incarceration. *Click*, 2017 WL 1189750, at \*18. In addition, pursuant to the Act, the Defendant was mandatorily required to serve the first twenty-five years of the drug-free-zone sentence for the first heroin transaction at one hundred percent. *See* Tenn. Code Ann. § 39-17-432(c) (Supp. 1995) (requiring the defendant "to serve at least the minimum sentence for such defendant's appropriate range of sentence"). Thereafter, the remainder of the Defendant's effective sentence, *i.e.*, fifty-five years, was to be served at a Range II release eligibility rate of thirty-five percent.

## B.     Motion for Resentencing Proceedings

Following various amendments to the Act in 2020 and 2022, the pro se Defendant, in October 2022, moved for resentencing pursuant to Tennessee Code Annotated section 39-17-432(h). In the motion, the Defendant requested "an evidentiary hearing, at which [he] and [the] district attorney general may present evidence on this motion to determine [the Defendant's] eligibility to receive a lower sentence and release date." The Defendant stated that he was "confident" he met the statutory requirements and asked the trial court "to use its discretion to reduce his sentence." Counsel was appointed for the indigent Defendant, and the trial court held an evidentiary hearing on December 12, 2023.

At the hearing, the Defendant argued that his effective eighty-year sentence was excessive. He asked the trial court to reduce his sentence by resentencing him in Counts 1 and 2 to Class B felonies as a Range II, multiple offender with a sentencing range of twelve to twenty years. He also requested concurrent sentencing. Though the Defendant seemingly conceded that the trial court could not resentence him under the Act on Counts 4, 5, 6, and 7, as these were not drug-free zone enhanced offenses, he maintained that it was "all interrelated." He later mentioned the possibility of the trial court's imposing concurrent sentencing on all counts. In favor of resentencing, the Defendant cited the relatively small amount of heroin exchanged during the three transactions and that his effective sentence was longer than those imposed for first degree murder.

The State asserted that pursuant to Code section 39-17-432(h)(1), the trial court only had jurisdiction to resentence the Defendant on Counts 1 and 2. The State noted that the trial court retained discretion in deciding whether to resentence the Defendant and that, pursuant to the statute, it could consider the Defendant's entire criminal record, the

- 4 -

Defendant's behavior while incarcerated, the circumstances of the offense, and any other factors the court deemed relevant. The State argued that the Defendant was not a good candidate for resentencing because, following his convictions in this case, he was subsequently found guilty in Knox County of conspiracy to possess with the intent to sell or deliver heroin in a drug-free zone; he had an extensive history of disciplinary infractions in the Tennessee Department of Correction ("TDOC") since his convictions in this case; and he committed the new felony offense of possession of contraband while incarcerated in the Knox County Jail. According to the State, the interests of justice did not weigh in favor of resentencing the Defendant.

The Defendant testified on his own behalf. The Defendant acknowledged that he had a substance abuse problem, claiming that it began to "spiral[] out of control" after his brother died in a car accident. He noted that he had mainly been in TDOC custody since his incarceration in 2015 but had not been able to participate in any TDOC programs due to the length of his sentence. According to the Defendant, he had never been given an opportunity to pursue substance abuse treatment. After he had filed his motion for resentencing, he participated in various classes while awaiting court proceedings in Knox County—Substance Abuse Education, Job Readiness, Family and Community Reunification, Anger Management, and Behavior Change.

The Defendant asked the trial court to "help [him] get some of [his] life back" because he had been "locked up a decade for a quarter of a gram" of heroin. He asserted that he knew he "did wrong" and could change if he were given the necessary tools to deal with his drug addiction. He acknowledged that he had "put [his] family through hell" and had missed seeing his children grow up.

On cross-examination, the Defendant admitted that he had multiple convictions for various offenses as had been outlined in the State's original notice of intent to seek enhanced punishment as a Career Offender that had been used at trial. The Defendant further agreed that, following the present convictions, he was convicted in Knox County of conspiracy to possess with the intent to sell or deliver heroin in a drug-free zone and sentenced to twenty-five years in the TDOC. The Defendant insisted that these two cases involved "the same investigation" and explained that he was a drug addict and not a drug dealer. The Defendant had likewise filed a motion for resentencing in the Knox County case. Regarding his pending Knox County charge for possession of contraband in a penal institution, the Defendant indicated that it was an overdose situation.

The Defendant was then presented with his more than thirty violations of TDOC disciplinary policies since his incarceration in 2015. The Defendant admitted that he had

been "in trouble a bunch" while incarcerated, including guilty pleas to possession of a nine-inch knife in 2022, defiance by blocking a door in 2021, possession of a cut mirror and a plexiglass knife in 2020, possession of three gallons of an intoxicant and an additional five gallons of an intoxicant in 2020, failure to attend GED class in 2019, and refusal to participate in his program assignment in 2018. He acknowledged that there were "weapons, razor blades, all throughout" his time incarcerated. However, the Defendant blamed his cellmates for "at least half" of the infractions, stating that if one cellmate committed a violation, then the entire cell received a "write-up."

He insisted he only had the nine-inch knife for his own protection and contended that the mirror was simply broken, that he was not "holding it or nothing." According to the Defendant, he "was living like [he] was never getting out." Regarding his failure to attend GED class, he explained that a GED was not going to help someone who would never be released from prison and that his attendance in class kept him from working in the kitchen. He insisted that he had not had any disciplinary infractions "in years."

Corporal Joseph Rees of the Knox County Sheriff's Office testified to the details contained in the arrest warrant he had filed against the Defendant for possession of contraband in a penal facility following an incident in the Knox County Detention Facility on January 10, 2023. Corporal Rees stated that at approximately 3:57 p.m., he found the Defendant lying on the floor in one of the jail's "general population pod[s]" and that he believed the Defendant was exhibiting signs of an overdose from narcotics because the Defendant was "unresponsive, pale in color, [and had] blue coloration around the lips[.]" Following the administration of chest compressions accompanied by several doses of NARCAN, the Defendant became "somewhat responsive," and he was taken to the hospital for treatment.

Corporal Rees testified that as a safety precaution, he searched the Defendant's pockets and found a yellow piece of paper with residue on it that later tested positive for fentanyl. According to Corporal Rees, the facility was experiencing "some issues particularly with fentanyl," and four others "in the same pod" suffered from overdoses that same day. Corporal Rees confirmed that these charges were still pending.

The Defendant introduced into evidence copies of the official forensic chemistry reports prepared by the Tennessee Bureau of Investigation reflecting the different weights of the heroin exchanged during the three drug transactions. In addition, he introduced the jury question submitted during trial asking, "What is the definition of 'real property'[] as it pertains to the laws of 'Drug-Free School Zone'[?]" and "Does 'real property' mean school grounds?"; the original sentencing hearing transcript in this case with related

exhibits; five certificates reflecting the Defendant's completion of various classes while incarcerated in Knox County; and his similar motion for resentencing filed in Knox County relative to his conspiracy to possess with the intent to sell or deliver 150 grams or more of heroin in a drug-free zone conviction.

The State introduced into evidence the addendum to the original presentence investigation report. The addendum reflected thirty-three disciplinary infractions in the TDOC, with corresponding guilty pleas, committed by the Defendant since his incarceration in this case in 2015. The addendum also stated the following:

> Available sources reflect the Defendant has not completed any treatment programs and is unable to be placed into any such programs since 2018 due to the [D]efendant refusing to complete a [risk and needs assessment]. At that time the offender admitted to being enrolled in a treatment program previously prior to custody and voluntarily left.
>
> The [D]efendant was previously employed until 2021 within the prison.
>
> The [D]efendant was confirmed to be a "State Enforcer" within the Aryan Nation. Last assessed and updated on 6/22/2020.

The State also introduced the Defendant's original judgments in this case, the Defendant's TDOC disciplinary records, the judgment form for the subsequent Knox County conspiracy conviction, and the January 10, 2023 Knox County arrest warrant for possession of contraband in a penal facility. Moreover, the State introduced its original notice of intent to seek enhanced punishment as a Career Offender, which reflected the Defendant's convictions in Jefferson County for aggravated burglary and theft of property more than $1,000 on January 6, 2006; in Sevier County for theft of property more than $1,000 and four counts of aggravated burglary on January 5, 2006; in Sevier County for aggravated assault and theft of property more than $1,000 on October 7, 2003; in Sevier County for theft of property more than $1,000 on December 15, 2003; and in Sevier County for sale and delivery of oxycodone on December 11, 2002. In addition, the State conceded that it was not calling any witnesses to testify "that there were children from the school present" at the time this transaction occurred.

The parties clarified for the trial court the various trial evidence reflecting the distance measurements from the drug transaction's location in the Taco Bell/Exxon parking

lot to the different points on the school's two parcels of land. From this, the trial court said that it was "very clear" the transaction occurred within five hundred feet of school property.

The trial court announced that it had reviewed the evidence, the arguments presented, and the relevant statute and case law. After reviewing the various provisions of Code section 39-17-432(h), the trial court first found that the Defendant had an extensive criminal record dating back to 2002 when he was about twenty-three years old, that he had a long history of drug addiction, and that his drug addiction "more likely than not played a role in his breaking the law." The trial court classified the Defendant's record as "terrible[,]" finding that he spent "the prime of his adult life leading to his incarceration in this case as either a drug addict or a drug dealer or, if not because of drugs, simply an unchecked felon preying on the community[.]" The trial court also found that the Defendant had incurred numerous disciplinary infractions while in TDOC custody on these offenses, including a recent infraction in January 2023 while in Knox County custody that led to his being charged with possession of contraband in a penal institution, accrediting Corporal Rees's testimony in that regard. The trial court mentioned that the Defendant's behavior while incarcerated alone convinced it that a new sentence would not be in the interests of justice. Based on the applicable legal standards, the trial court found that resentencing the Defendant was not in the interests of justice and denied his motion. The trial court entered a written order to that effect on January 18, 2024.

The Defendant filed a timely notice of appeal. By order dated October 24, 2024, this court denied the State's motion to dismiss the appeal and granted the Defendant's motion to treat his notice of appeal document as a petition for a writ of certiorari. The case is now before us for review.

## II.    ANALYSIS

On appeal, the Defendant argues that this court should grant his writ of certiorari petition because "the trial court reached an illogical conclusion, made a decision based upon a clearly erroneous assessment of the evidence, and caused an injustice to" the Defendant by refusing to both lower his felony classification and remove the mandatory minimum service requirement for his drug-free zone convictions. In support of his argument, the Defendant cites the small amount of heroin involved; the length of the overall sentence imposed of eighty years; that there were no children present when the September 5, 2012 transaction occurred; and the unavailability of rehabilitative programs while incarcerated in the TDOC given his extended-release date of 2092. The Defendant emphasizes that his sentence "exceeds a life sentence for first degree murder." The

Defendant asks that we consider his claim and remand the case to the trial court with instructions to resentence him on the drug-free zone offenses.

The State responds that a writ of certiorari is not warranted because the circumstances of this case are not sufficiently extraordinary to trigger the remedy of certiorari. According to the State, the writ should not be employed because the trial court conducted an evidentiary hearing, considered the factors for resentencing as set forth in the amended Act, made findings consistent with the record, and correctly "denied the [D]efendant's request for resentencing based on its conclusion that a new sentence would not be in the interest of justice." In addition, the State asserts the record supports the trial court's conclusion that resentencing was not called for in this case, noting the Defendant's extensive criminal history and his behavior while incarcerated.

The common law writ of certiorari has been codified at Tennessee Code Annotated section 27-8-101, which provides,

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy.

Certiorari lies, in part, "[w]here no appeal is given[.]" Tenn. Code Ann. § 27-8-102(a)(2).

The common law writ of certiorari is an "extraordinary judicial remedy," *State v. Lane*, 254 S.W.3d 349, 355 (Tenn. 2008) (quoting *Robinson v. Clement*, 65 S.W.3d 632, 635 (Tenn. Ct. App. 2001)), and is limited in application such that it normally may not be used "to inquire into the correctness of a judgment issued by a court with jurisdiction[,]" *State v. Adler*, 92 S.W.3d 397, 401 (Tenn. 2002) (citing *State v. Johnson*, 569 S.W.2d 808, 815 (Tenn. 1978)), *superseded by statute on other grounds as recognized in State v. Rowland*, 520 S.W.3d 542, 545 (Tenn. 2017). "A writ of certiorari is an order from a superior court to an inferior tribunal to send up a complete record for review, so that the reviewing court can ascertain whether the inferior tribunal has exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily." *Lane*, 254 S.W.3d at 354 (citing *Hall v. McLesky*, 83 S.W.3d 752, 757 (Tenn. Ct. App. 2001)). Upon conducting this inquiry, certiorari is appropriate to correct the following types of errors: "(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's

authority; and (5) plain and palpable abuses of discretion." *Id.* at 355 (quoting *Willis v. Tennessee Dept. of Correction*, 113 S.W.3d 706, 712 (Tenn. 2003)).

At issue in this case is the application of the Drug-Free Zone Act. The stated purpose of the Act, at the time of its enactment in 1995, was to create drug-free school zones to provide "all students in this State an environment in which they can learn without the distractions and dangers that are incident to the occurrence of drug activity in or around school facilities." Tenn. Code Ann. § 39-17-432(a) (Supp. 1995). In 2005, the General Assembly amended the Act to expand the list of properties beyond schools to include a "preschool, child care agency, or public library, recreational center or park" and changed the name of the prohibited zone to "drug-free zone." *Id.* § -432(a), (b)(1) (Supp. 2005).

The General Assembly, in 2020, again amended the Act by reducing the distance used to determine a drug-free zone from 1,000 feet to 500 feet and by giving trial courts discretion in imposing the one classification enhancement for properties identified as drug-free zones. *Id.* § -432(b)(1). Under the 2020 amendments, minimum sentences were no longer mandatory, but discretionary, and there was a "rebuttable presumption that a defendant [was] not required to serve at least the minimum sentence for the defendant's appropriate range of sentence." *Id.* § -432(c)(2). The rebuttable presumption could be overcome if the trial court found "that the defendant's conduct exposed vulnerable persons to the distractions and dangers that are incident to the occurrence of illegal drug activity." *Id.* The 2020 amendments applied only to offenses committed on or after September 1, 2020. 2020 Tenn. Pub. Acts, ch. 803, § 12.

Effective April 29, 2022, the General Assembly once more amended Tennessee Code Annotated section 39-17-432 by adding subsection (h). Subsection (h) allowed defendants convicted of a drug offense in a drug-free school zone before July 1, 2005, or in a drug-free zone from July 1, 2005, to August 31, 2020, to seek resentencing if the sentence was mandatorily enhanced based on the distance the drug offense occurred from the drug-free zone property. *State v. Ewing*, No. E2023-01705-CCA-WR-CO, 2025 WL 712890, at *4 (Tenn. Crim. App. Mar. 5, 2025).

Upon the filing of a motion for resentencing by an indigent defendant, the trial court is required to appoint counsel to represent the defendant on the motion. Tenn. Code Ann. § 39-17-432(h)(2). A trial court must also determine if it can "entertain" the motion. *Id.* § -432(h)(3). A trial court is permitted to entertain a motion for resentencing except when one of the following circumstances is present:

- 10 -

(A) A previous motion made under this subsection (h) to reduce the sentence was denied after a review of the motion on the merits;

(B) Resentencing the defendant to a shorter period of confinement for this offense would not reduce the defendant's overall sentence or lead to an earlier release; or

(C) The defendant has previously applied to the governor for a grant of executive clemency on or after December 2, 2021, for the same offense and has been denied.

*Id.*

Once counsel is appointed, and the trial court has determined it may entertain the motion, the defendant is entitled to an evidentiary hearing "at which the defendant and district attorney general may present evidence." *Id.* § -432(h)(1). At the hearing, the defendant "bear[s] the burden of proof to show that the defendant would be sentenced to a shorter period of confinement under this section if the defendant's offense had occurred on or after September 1, 2020." *Id.*

Following the presentation of proof, relative to the rebuttable presumption regarding service of the mandatory minimum sentence, the trial court should determine whether the defendant's conduct "exposed vulnerable persons to the distractions and dangers that are incident to the occurrence of illegal drug activity." *Id.* § -432(c)(2). If the defendant's conduct did not expose vulnerable persons to such dangers, the defendant is presumed not to be "required to serve at least the minimum sentence for the defendant's appropriate range of sentence." *Id.*

Thereafter, the trial court should determine if resentencing the defendant, including removal of either one or both the felony classification enhancement and mandatory minimum service requirement, is in furtherance of the "interests of justice." *Id.* § -432(h)(1); *Ewing*, 2025 WL 712890, at *5-7. In determining whether a new sentence would be in the interests of justice, a trial court may consider:

(A) The defendant's criminal record, including subsequent criminal convictions;

(B) The defendant's behavior while incarcerated;

(C) The circumstances surrounding the offense, including, but not limited to, whether the conviction was entered into pursuant to a plea deal; and

(D) Any other factors the court deems relevant.

*Id.* If the trial court finds that resentencing would not be in the interests of justice, it should deny the defendant's motion. Additionally, the trial court "shall not resentence the defendant if the new sentence would be greater than the sentence originally imposed." *Id.*

The final provision of subsection (h) makes it clear that "subsection (h) does not require a court to reduce any sentence pursuant to this section." *Id.* § -432(h)(4). The trial court is given "very broad discretion not to reduce any sentence." *Ewing*, 2025 WL 712890, at *7 (citing Tenn. Code Ann. § 39-17-432(h)(4)).

In this case, the trial court first determined that the drug-free zone offenses in this case occurred "very clear[ly]" within five hundred feet of Cattlesburg Elementary School. It then considered and weighed the statutory factors for resentencing, noting the Defendant's extensive criminal history and behavior while incarcerated. *See* Tenn. Code Ann. § 39-17-432(h)(1)(A), (B). Relative to the Defendant's criminal record, the trial court noted that the Defendant had spent "the prime of his adult life" leading up to his incarceration in this case as a drug addict or a drug dealer or, if not due to drugs, "an unchecked felon preying on the community." The Defendant's history of criminal convictions prior to his sentence in this case was outlined in the State's original notice to seek enhanced punishment as a Career Offender, and the Defendant has since been convicted in Knox County of conspiracy to possess with the intent to sell or deliver 150 grams or more of heroin in a drug-free zone. The trial court found that the Defendant's behavior while incarcerated, which included over thirty disciplinary infractions and a new charge for possession of contraband in a penal institution, which charge was supported by Corporal Rees's testimony, also convinced it that a new sentence would not be in the interests of justice. The trial court stated that the Defendant's behavior while incarcerated alone was sufficient not to resentence the Defendant.

We also note that the addendum to the presentence investigation report belies the Defendant's assertion that he was not receiving drug treatment while in the TDOC due to the length of his incarceration, but it was instead due to his refusal to complete the risk and needs assessment. The addendum also contradicted the Defendant's testimony at the hearing that he had never received any drug treatment, stating therein that the Defendant had "admitted to being enrolled in a treatment program previously prior to custody and

voluntarily" leaving that program. Moreover, the addendum reflected that the Defendant was confirmed as gang-affiliated as late as 2020.

The record does not reflect that "the trial court exceeded its jurisdiction" or that the trial court "acted illegally, fraudulently, or arbitrarily" in denying the Defendant's motion for resentencing. *Lane*, 254 S.W.3d at 357; *see also Patton*, 2024 WL 634887, at *5-6 (affirming the denial of a motion for resentencing based upon the trial court's consideration of the defendant's prior criminal record and the facts and circumstances of the offense); *State v. Potee*, No. M2023-00179-CCA-R3-CD, 2024 WL 748606, at *5 (Tenn. Crim. App. Feb. 23, 2024) (affirming the denial of a motion for resentencing based upon the trial court's consideration of the defendant's criminal record, subsequent conviction for conspiracy to introduce contraband into a penal institution, and disciplinary infractions while incarcerated), *no perm. app. filed*.

## III.  CONCLUSION

Accordingly, we deny the Defendant's request for a writ of certiorari and affirm the trial court's judgment denying the Defendant's motion for resentencing.

 s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE